IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

ALTAMAHA RIVERKEEPER, INC., and
JANE FRASER FULCHER,

    Plaintiffs,

vs.

U.S. ARMY CORPS OF ENGINEERS; LT.
GENERAL CARL A. STROCK, U.S. Army
Corps of Engineers; COLONEL MARK
S. HELD, U.S. Army Corps of
Engineers, Savannah District;
MARY GEARON; AND ROBERT FISHER,

    Defendants.

CIVIL ACTION NO.
CV 206-186

# O R D E R

The captioned case is presently before the Court on Plaintiffs' "Motion to Supplement the Administrative Record." (Doc. No. 31.) Defendants oppose Plaintiffs' motion. (See Doc. Nos. 32, 33.) For the reasons set forth below, Plaintiffs' motion is **DENIED**.

## I. BACKGROUND

On January 30, 2006, Defendants Gearon and Fisher ("the private Defendants") submitted applications to the U.S. Army Corps of Engineers ("the Corps"), Savannah Division, seeking a determination regarding whether wetlands exist on their Sea

Island, Georgia, property and seeking authorization pursuant to nationwide permit ("NWP") 18 to fill any existing wetlands. See 33 U.S.C. § 1344. NWP 18 is a general permit that covers minor discharges of dredged or fill material into waters of the United States. Pursuant to 33 C.F.R. § 330.1(d), the Corps has placed "Regional Condition #30" on NWP 18, which specifically prohibits the utilization of NWP 18 in "tidal waters."[1] After reviewing the applications, which stated that the proposed project site was not located in "tidal waters," the Corps approved the applications for the NWP 18 permits on March 6 and 9, 2006, respectively. (Admin. R.[2] at 89-92, 123, 212-15, 246.)

On March 21, 2006, Plaintiff Fulcher, a Sea Island resident and member of Plaintiff Altamaha Riverkeeper, Inc. ("ARK"), contacted the Corps and requested that it conduct a field study of the sites to ensure that the subject wetlands were not tidal. (Id. at 87, 210.) In response to Ms. Fulcher's request, a project manager with the Corps conducted

---

[1] "Tidal waters" are "waters that rise and fall in a predictable and measurable rhythm or cycle due to the gravitational pulls of the moon and sun. Tidal waters end where the rise and fall of the water surface can no longer be practically measured in a predictable rhythm due to masking by hydrologic, wind or other effects." 33 C.F.R. § 328.3(f).

[2] "Admin. R." refers to the Certified Copy of Administrative Record submitted by the Corps on October 6, 2006.

2

an onsite visit on March 27, 2006, and concluded that, in fact, the sites were not "tidally influenced." (Id. at 85, 87, 208, 210.) On April 19, 2006, a Corps regulatory specialist conferred with an employee of the Georgia Department of Natural Resources, Coastal Resources Division, who also confirmed that the wetland at issue was freshwater. (Id. at 74, 197.) Plaintiffs, however, submitted materials in support of their contention that the area sought to be filled contained tidal waters. (Id. at 67-69, 77-79, 190-95.)

On May 25, 2006, in response to Plaintiffs' concerns, the Corps directed the private Defendants to "measure the tidal range, if any exists, on the property boundary during the next spring tide[,]" and threatened to revoke the permits if they did not comply. (Id. at 62, 65-66, 185, 188-89.) In compliance with this request, Sligh Environmental Consultants, Inc. ("Sligh"), an environmental firm hired by the private Defendants to facilitate the obtainment of the permits, installed an electronic monitoring system in the subject wetland and conducted monitoring from May 26 to May 28, 2006, concluding that "the water levels in the subject wetland were not subject to any tidal fluctuations." (Id. at 43-45, 167-69.)

Undeterred, Plaintiffs continued to send additional evidence to the Corps, including video excerpts and the

reports and findings of two expert consultants. In response, it appears that on August 17, 2006, members of the Regulatory Division of the Corps met with Mr. Jason Ward of the Corps Hydrology Branch and Mr. Dan Bucey, the principal of Sligh, to review the information submitted by Plaintiffs. (Id. at 10-12, 134-36.) By letter dated August 22, 2006, the Corps acknowledged that "tidal flow did enter the wetland in question on August 13, 2006," but it attributed this occurrence to a significant rainfall event on Sea Island on August 12, 2006.[3] (Id.) The Corps then concluded that this tidal flow did not meet the definition of "tidal water" in that the water does not rise and fall in a predictable and measurable rhythm or cycle, and thus, it refused to revoke the NWP 18 permits. (Id.)

On August 23, 2006, Defendants Gearon and Fisher began filling the wetland on the project site. (Compl. ¶ 57.) Plaintiffs filed the instant suit the next day and requested a temporary restraining order and a preliminary injunction. (Doc. No. 4). On October 11, 2006, this Court held a hearing on Plaintiffs' motion for a temporary restraining order and a preliminary injunction. On October 27, 2006, after considering the parties' briefs, the arguments presented at

---

[3]Plaintiffs contend that there was no significant rainfall event on Sea Island during the relevant time.

the October 11th hearing, as well as the "record evidence," which consisted of the Certified Copy of the Administrative Record submitted by the Corps on October 6, 2006, I denied Plaintiffs' motion. (See Order of Oct. 27, 2006.)

## II. DISCUSSION

In an action brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, et seq., "[t]he focal point for judicial review of an administrative agency's action should be the administrative record already in existence, not some new record made initially before the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). "The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). As such, the scope of judicial review is generally limited to "the record the agency presents to the reviewing court." Preserve Endangered Areas of Cobb's History, Inc. ("PEACH") v. United States Army Corps of Eng'rs, 87 F.3d 1242, 1246 (11th Cir. 1996) (citation and internal quotation omitted).

Although a court conducting a judicial review is not typically empowered to do so, "certain circumstances" may justify going beyond the administrative record. Id. For example, supplementation of the administrative record may be appropriate where: "1) an agency's failure to explain its

action effectively frustrates judicial review; 2) it appears that the agency relied on materials not included in the record; 3) technical terms or complex subjects need to be explained; or 4) there is a strong showing of agency bad faith or improper behavior." Id. at 1246 n.1 (citing Animal Defense Council v. Hodel, 840 F.2d 1432, 1436-37 (9th Cir. 1988)). Even so, these exceptions must be narrowly construed, and a party seeking to supplement the administrative record must meet "a heavy burden to show that supplementation is necessary." Kirkpatrick v. White, 351 F. Supp. 2d 1261, 1272 (N.D. Ala. 2004) (citations and internal quotation omitted).

Plaintiffs, as they have previously asserted, continue to maintain that the administrative record in this action should only consist of information which was before the Corps at the time it issued the permits on March 6 and 9, 2006. (Doc. No. 31 at n.1). However, the Court's October 27th Order reasoned that the administrative record in this action properly consists of all the information contained within the Certified Copy of the Administrative Record submitted by the Corps on October 6, 2006, not simply the materials considered before March 6 and 9, 2006. This conclusion was based upon the fact that after the initial issuance of the NWP 18 authorizations following the Corps' "desktop review," the Corps considered evidence submitted by Plaintiffs in conjunction with its own

investigations before eventually determining that the subject wetlands were not "tidal waters" and that the permits should not be revoked. (See Order of Oct. 27th).

As the Court declined Plaintiffs' invitation to truncate the administrative record, Plaintiffs now seek to *supplement* the record, arguing that the agency acted "arbitrarily and capriciously by declaring the record 'closed' before the validity of its 'explanation' for the tidal flow documented in the August 13th video clip could be tested." (Doc. No. 31 at 6). Specifically, Plaintiffs seek to add to the administrative record: 1) Mr. James Holland's Second Declaration, which describes and attaches his video documentation of the subject wetlands on September 10, 2006, and October 9, 2006, and 2) Mr. William H. Lyons's Declaration, Addendum No. 1, which relates to field measurements conducted on the subject wetlands during September 2006. (See id. at 2-3).

Plaintiffs are, apparently, attempting to supplement the administrative record based upon a showing of agency bad faith or improper behavior. However, as opposed to demonstrating agency bad faith, Plaintiffs simply dispute the Corps' decision-making process which, based upon the information in the administrative record, resulted in a finding the subject wetlands are not "tidal waters."

Plaintiffs assert that the Corps decision to close the record without considering additional evidence, such as the instant submissions, was "arbitrary." (Id. at 6.) Plaintiffs clarify this argument by stating that they are not taking issue with "the Corps decision *per se*[,] but the flawed process through which it was reached." (Id.) As these statements illustrate, the instant motion simply repackages Plaintiffs' claim that the Corps' decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" 5 U.S.C. § 706(2)(A), which is not a justification for the submission of extra-record evidence. (See also Comp. ¶¶ 31, 63; Pls.' Mot. Prelim. Inj. at 8).

The Court is well aware of Plaintiffs' perspective regarding the Corps' decision but, as to the instant issue, Plaintiffs have failed to make a showing of agency bad faith which justifies the consideration of material outside of the record. Similarly, I cannot discern how any of the additional exceptions, set forth *supra*, would justify the supplementation of the administrative record with the materials presented by Plaintiffs. In sum, Plaintiffs have failed to meet the heavy burden necessary to warrant supplementation of the administrative record.

### III. CONCLUSION

Accordingly, Plaintiffs' "Motion to Supplement the Administrative Record" is **DENIED**. (Doc. No. 31.)

**ORDER ENTERED** at Augusta, Georgia, this ____ day of June, 2007.

_____
UNITED STATES DISTRICT JUDGE